IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | |
|---|---|
| CATHERINE A. WILLIS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) CV 105-021 ) |
| JO ANNE B. BARNHART, Commissioner of Social Security Administration, | ) ) ) |
| Defendant. | ) ) |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Catherine A. Willis ("Plaintiff") appeals the decision of the Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits and Supplemental Security Income payments under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

### I. BACKGROUND

Based on claims of disability dating back to February 2, 1997, Plaintiff applied for Supplemental Security Income and Disability Insurance Benefits on January 2 and 10, 2001,

respectively.[1] Tr. ("R."), pp. 78-80, 286-88; see also R. 85-94 (Adult Disability Rpt. dated Jan. 9, 2001). Plaintiff alleges disability due to emphysema, a spot on her liver, glaucoma, knee problems, shortness of breath, and mental retardation. R. 15, 40, 86. The Social Security Administration denied Plaintiff's applications and request for reconsideration. R. 64-68, 71-73A, 290-93. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). R. 74. After a hearing in which Plaintiff, who was represented by counsel, testified on her own behalf, the ALJ issued an unfavorable decision dated December 24, 2002.[2] R. 11-20.

Applying the five-step sequential process required by 20 C.F.R. §§ 404.1520 and 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

2. The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(b) and 416.920(b).

3. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

---

[1]The record shows that Plaintiff previously filed applications for benefits in March 1997, alleging disability as of November 30, 1996. R. 50-56. The applications were denied, with the Administrative Law Judge issuing a final decision on July 1, 1998. Plaintiff did not seek judicial review of the unfavorable administrative decision, and therefore the time period covered by the previous denial is not currently before the Court. Accordingly, pursuant to the principle of administrative finality, the earliest possible onset date for the applications currently under review is actually July 2, 1998 (the day after the date of issuance of the prior denial), not February 2, 1997.

[2]A Vocational Expert, Joel Leonard, also testified at the hearing. R. 40-44.

    4.    The claimant is unable to perform any of her past relevant work (20 CFR §§ 404.1565 and 416.965) but retains the residual functional capacity to perform a significant range of light work as follows: no overhead reaching with the left arm, and no fumes/smoke. The work should be simple, and unskilled, involving 1-2-step processes.[3]

    5.    Based on the claimant's age, education, and work experience, Medical-Vocational Rule 202.16-17 as a framework for decision-making, and the testimony of the vocational expert, there are a significant number of jobs in the national economy that the claimant could perform, including: machine work tender, checker, and cafeteria attendant. Thus, the claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(f) and 416.920(f)).

R. 19-20.

When the Appeals Council ("AC") denied Plaintiff's request for review, the ALJ's decision became the final decision of the Commissioner. R. 6-8. Having failed to convince the AC to review her case, Plaintiff filed this civil action in the United States District Court for the Southern District of Georgia requesting a reversal of that adverse decision. Plaintiff now argues that the ALJ erred in determining that Plaintiff did not meet Listing 12.05(C), relating to Mental Retardation, at step three of the sequential evaluation process.

---

[3]Light work involves:

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. . . . If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).

## II. THE STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Cornelius, 936 F.2d at 1145. Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Id. Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary

evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III. DISCUSSION

**A.    Remand for Consideration of "New" Evidence Not Warranted.**

Plaintiff presents her Statement of the Issue as follows: "Whether the ALJ erred in failing to remand the case for consideration in light of Listing 12.05(C) given evidence of multiple IQ scores within Listing range, new and material evidence of school records indicating deficient intellectual functioning, and undisputed severe physical impairments?" (Doc. no. 8, p. 1). Thus, at first blush, it appears that Plaintiff may be seeking a remand for consideration of new evidence that the ALJ had not had an opportunity to review, pursuant to sentence six of § 405(g), but simply made a scrivener's error in suggesting the "ALJ" rather than the "AC" erred in failing to remand the case.[4]

---

[4]Sentence six of § 405(g) authorizes a reviewing court to remand a case for consideration of new evidence only if the evidence is material and only if good cause exists for the claimant's failure to submit the evidence at the prior administrative proceeding. Vega v. Commissioner of Soc. Sec., 265 F.3d 1214, 1218 (11th Cir. 2001).

However, as the Commissioner points out (doc. no. 11, p. 11 n.9), the copies of Plaintiff's school records submitted to the AC in July 2003 (and the basis for Plaintiff's current suggestion of new evidence) are not new and material evidence because the exact same documentation was already a part of the administrative record that had been before the ALJ prior the issuance of his written decision. Compare R. 129-32 with R. 295-301. Moreover, it is clear from the Argument section of Plaintiff's brief that she is arguing for a sentence four remand by contending that the ALJ - not the AC - erred when he determined that she did not meet Listing 12.05(C) at step three of the sequential evaluation process. (Doc. no. 8, p. 4 ("The ALJ Erred in Failing to Find that Plaintiff Met Listing 12.05(C) in Light of Multiple IQ Scores and Undisputed Physical Impairments Within the Listing Range.")). Thus, the Court turns its attention to assessing whether a reversal or remand pursuant to sentence four of § 405(g) is warranted based on the ALJ's analysis of the administrative record before him.[5]

**B.     Evidence Does Not Show Satisfaction of the 12.05(C) Listing.**

Plaintiff maintains that the ALJ's determination at step three of the sequential evaluation process is inconsistent with the record evidence. Simply stated, Plaintiff contends that she meets the 12.05(C) Listing. The Commissioner, on the other hand, contends that substantial evidence in the record proves otherwise. The Court notes from the outset that

---

[5]In any event, the Court notes that these school records are apparently offered in an attempt to show that Plaintiff's mental impairment manifested itself before age 22, a requirement of Listing 12.05(C) that is discussed in more detail, *infra*. (See doc. no. 8, pp. 5-6). However, as discussed in Part III(B), the record evidence does not establish that Plaintiff's mental impairment, whatever its initial manifestation date, qualifies as mental retardation as that term is defined in the Commissioner's Regulations.

Plaintiff bears the burden of showing that her condition meets or equals the Listing. Wilkinson *ex rel.* Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987) (*per curiam*). In order to show that her impairment meets a Listing, Plaintiff needs to meet all of the specified medical criteria; an impairment that manifests only some of those criteria, no matter how severely, does not qualify. Sullivan v. Zebley, 493 U.S. 521, 530 (1990).

At step three of the sequential evaluation process, the Commissioner must determine whether a claimant meets or equals a disability described in the Listing of Impairments, which describes impairments that are considered severe enough to prevent a person from performing any substantial gainful activity. Davis v. Shalala, 985 F.2d 528, 532 (11th Cir. 1993). It is axiomatic that when a claimant's condition meets or equals a Listing, the Commissioner must find the claimant disabled without regard to the claimant's age, education, or previous work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d).

1. **IQ Scores Alone Not Conclusive.**

Relevant to Plaintiff's case is the 12.05(C) Listing. It provides: "The required level of severity for this disorder is met when . . . [there is] a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05(C). Thus, a claimant satisfies Listing 12.05(C) when she "presents a valid I.Q. score of 60 to 70 inclusive, and evidence of an additional mental or physical impairment that has more than 'minimal effect' on the claimant's ability to perform basic work activities."

Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992).[6] The Eleventh Circuit, however, has recognized "that a valid I.Q. score need not be conclusive of mental retardation where the I.Q. score is inconsistent with other evidence in the record on the claimant's daily activities and behavior." Id.; see also Hodges v. Barnhart, 276 F.3d 1265, 1269 (11th Cir. 2001) (noting that while a claimant's low IQ scores give rise to a presumption of mental retardation, such a presumption may be rebutted with evidence of daily activities that are inconsistent with a diagnosis of mental retardation); Popp v. Heckler, 779 F.2d 1497, 1499 (11th Cir. 1986) (*per curiam*) (noting that IQ "test results must be examined to assure consistency with daily activities and behavior").

Here, the ALJ's decision acknowledged Plaintiff's range of IQ test scores that fell within the 60 to 70 range. R. 16. The ALJ also noted that Dr. Douglas Payne, who reported a performance IQ score of 74, a verbal IQ score of 66, and a full scale IQ score of 67 for Plaintiff, also commented that Plaintiff can "understand and carry out simple instructions, get along with others, follow a work schedule, and meet production goals." R. 16, 168-69. Notably, Dr. Payne did not diagnose Plaintiff as mentally retarded, but instead noted that she had "probable borderline intellectual functioning." R. 169. In 2000, Dr. Edwin Sperr reported a performance IQ score of 74, a verbal IQ score of 70 and a full scale IQ score of

---

[6] Although the 12.05(C) Listing is generally characterized as having a two-prongs, an IQ prong and an additional impairment prong, it actually encompasses three prongs inasmuch as the Listing defines mental retardation as "significantly subaverage general intellectual function with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05(C)(emphasis added); see also Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997) (noting three-part criteria for obtaining benefits under Listing 12.05(C)).

69 for Plaintiff and noted that Plaintiff is functionally illiterate, but he also commented that Plaintiff is capable of performing unskilled manual type job tasks. R. 280-81. Dr. Sperr also found that Plaintiff had "borderline intellectual functioning." R. 282. By November of 2002, Dr. Sperr reported a performance IQ score of 70, a verbal IQ score of 69, and a full scale IQ score of 67 for Plaintiff and again diagnosed Plaintiff with "borderline intellectual functioning." R. 277-78. Dr. Sperr noted that persons with "similar intellectual skills fare best performing the concrete manual type work" that has been performed in the past.[7] R. 16, 278.

Moreover, the ALJ noted Plaintiff's testimony at the hearing about her activities, including going to church and the grocery store and doing household chores. R. 17, 35, 37. The ALJ heard testimony that Plaintiff had well over ten years of experience working in housekeeping positions. R. 26-27. Plaintiff also testified as to being responsible for caring for her granddaughter while Plaintiff's daughter was at school during the day and having been able to qualify for a driver's license.[8] R. 29, 35, 39.

Thus, the Court concludes that in light of the other evidence of record, including the findings of examining and non-examining psychologists, as well as Plaintiff's lengthy work history and daily activities, the ALJ properly determined that Plaintiff's IQ scores do not provide sufficient evidence of mental retardation to satisfy Listing 12.05(C).

---

[7] Additionally, neither of the state agency psychologists who reviewed plaintiff's records concluded that she had a Listing 12.05 impairment. R. 206-23, 233-50.

[8] Plaintiff reported that her driver's license had been taken away in 1978 because of drunk driving charges and that she had not ever had her license re-instated. R. 39.

### 2. Severity of Additional Impairments Moot.

Plaintiff also argues that she satisfies the additional impairment prong of Listing 12.05(C) because the ALJ determined at step two of the sequential evaluation process that Plaintiff's history of shoulder and knee problems, along with a history of respiratory distress, were "severe." R. 16, 19. Plaintiff cites to Edwards *ex rel.* Edwards v. Heckler, 755 F.2d 1513, 1515 (11th Cir. 1985), for the proposition that the additional impairment prong is satisfied by "something less than 'severe' within the meaning of § 404.1520(c)." Therefore, she contends that by the ALJ's "own admission" that Plaintiff had step-two "severe" medical impairments, the "additional medical impairment" prong is satisfied. (Doc. no. 8, pp. 6-7). However, in light of Plaintiff's failure to show that she satisfies the requirements of the first prong of Listing 12.05(C) concerning her intellectual functioning, her argument concerning the severity of her other physical impairments is moot.[9]

In sum, the ALJ's finding at step three of the sequential evaluation process that Plaintiff did not meet all of the necessary requirements of Listing 12.05(C) is supported by substantial evidence and should be affirmed.

---

[9] As noted above, in order to show that her impairment meets a Listing, Plaintiff needs to meet <u>all</u> of the specified criteria; an impairment that manifests only some of those criteria, no matter how severely, does not qualify. Sullivan, 493 U.S. at 530.

10

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 17th day of May, 2006, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE